## THE STATE v. FRAUNBURG.

1. **Evidence:** DYING DECLARATION. An *ante mortem* statement, written down by another person and not read over to the deceased, is not admissible as a dying declaration, although it may be used by the writer to refresh his recollection as a witness.

2. **Criminal Law:** SELF DEFENSE. The right of self defense is not limited to actual peril of the life of the party assailed, but includes the case where a reasonable man would apprehend either danger to his life or great bodily harm.

3. **Instruction:** BASED UPON FACTS NOT IN EVIDENCE. An instruction based upon facts not in evidence is erroneous.

*Appeal from Des Moines District Court.*

MONDAY, JUNE 14.

THE defendant was indicted in the District Court of Wapello county for the crime of manslaughter in the killing of L. S. Barker, on the 8th of December, 1869. The indictment, with the other papers in the case, was transferred to the District Court of Des Moines county for trial, where, on the 26th day of September, 1873, the defendant was convicted of the crime charged in the indictment. From the judgment rendered against him he appeals to this court.

*H. H. Trimble, E. L. Burton* and *Hall & Baldwin*, for appellant.

*M. E. Cutts, Attorney General* and *D. N. Sprague, District Attorney*, for the State.

MILLER, CH. J.—I. On the trial in the District Court the District Attorney offered in evidence a certain writing as the dying declaration of the deceased, Lineas S. Barker, which was admitted by the court, against the objection of defendant's attorneys. This ruling they now assign as error. The writing contained what purported to be a statement of Barker, of the facts and circumstances attending the injury received by him at the hands of the defendant, which resulted in Barker's death. The statement was not written or signed by him, but was written by one H. P. Graves, a justice of the peace, who testified that he wrote the statement as the same was made to him by the deceased. The justice stated that in taking down the statement he would lean over the deceased, who was lying down, and hear him make his statement " till he thought he had got as much as he could get in words," then he would step to a desk and write it down, and again tell the injured man to proceed with his statement, and then write down what he said, and so on, until he obtained the full statement. It was not read over to the deceased then or afterwards.

*1. EVIDENCE: dying declaration.*

Where dying declarations are, at the time, reduced to writing and signed by the party making them, the writing is the best, if not the only, admissible evidence. *Butz v. The State,* 1 Meigs., 106; Viner's Abridgment, Title Evidence, 38; *Rex v. Gray,* 7 Car. & Paine, 230; 1 Greenlf. Ev., Sec. 161; and cases cited in notes; see also Wharton's Crim. Law, 312, 3d Ed. In this case, however, the statement as written down by the magistrate was not signed by the declarant. The writing was but a memorandum of what he stated, made by the justice of the peace, and which the latter, in testifying to the declarations of the deceased, might have been permitted to refresh his memory by the use of the written memorandum; the writing itself as the dying declarations of the deceased was not competent evidence, and should not have been admitted. 1 Greenlf. Ev., Sec 436, and cases cited in notes thereto.

Holding the writing to have been improperly admitted for

the foregoing reason, it becomes unnecessary to notice other objections urged against its admissibility.

II. The court gave to the jury the following instruction which is complained of as erroneous: ·

" 9. If the defendant, by improper intimacies and adulterous intercourse with the wife of the deceased, provoked the assault of the deceased, or if the defendant expected or had good reason to know or believe, *that he was not a welcome visitor at the house of the deceased,* so far as the deceased was concerned, and that he would incur the risk of a violent and deadly assault at the hands of the deceased, then, if you so find ·from the evidence, the court charges you that the defendant was not justifiable in taking the life of the deceased, unless there was no means left for him to escape or avoid the assaults of the deceased; and under such circumstances he would not be excusable or justifiable in taking the life of the deceased, unless he was reduced to the extremity of taking the life of the deceased to save his own life."

*2. CRIMINAL law: self defense.*

In this instruction the court recognizes, and correctly too, that, under the circumstances stated, the defendant retained the right of self defense, but limited the right to the *actual necessity of. saving his own life.* It is erroneous in, at least, two respects. It is not necessary, in order to the exercise of the right of self defense, that in fact the danger should be such that the party can only save his life by killing his assailant; such danger need not in fact exist. It is only necessary that to the *defendant's comprehension as a reasonable man,* there is actual and real danger. *The State v. Collins,* 32 Iowa, 37, and case cited.

Again the right of self defense is not limited to the necessity of saving the life of the party assailed. The law gives him the same right to use such force as may be reasonably necessary, under the particular circumstances, to protect himself from *great bodily harm,* as it does to save his life. *The State v. Burke,* 30 Iowa, 331, and cases cited on p. 334.

III. Complaint is also made of the giving of the 11th paragraph of the charge. It is as follows:

" 11. If the defendant went to the house of the deceased,

The State v. Fraunburg.

armed with a dangerous and deadly weapon, intending to use it upon the deceased if occasion offered, and if when discovered he became the aggressor, and rushed upon the deceased and stabbed him, when his own *life* was not in *actual* and *imminent* danger, then, if you so find the facts to be, the court charges you that the defendant's plea of self defense must fall to the ground." There was error in giving this instruction in this, at least, that there was no evidence tending to show that the accused went to the house of the deceased, armed with a deadly weapon *intending to use it upon the deceased*. If such had been the case it would have tended to establish the crime of murder, (of which the defendant was not indicted,) and by its premeditated character would have precluded the idea of self defense, but there being no such evidence the giving of the instruction was erroneous. The instruction also embodies the idea that the right of self defense can be exercised only when there is actual, and imminent danger to life, which we have seen is incorrect.

*3. INSTRUC-TION: based upon facts not in evidence.*

IV. At the commencement of the trial, and immediately after the jury had been sworn, and the indictment read to the jury, and they informed that the defendant pleaded "not guilty," counsel for defendant asked leave of the court to make the usual statement to the jury, of the case and the evidence to be introduced in the defense, etc. This was refused by the court, and the ruling is assigned as error. Since the judgment must be reversed, and the cause remanded for a new trial, on account of the errors already pointed out, and as the members of the court might not be entirely agreed in opinion upon this point, we pass it without a decision.

Other errors are also assigned which we deem it unnecessary to notice.

The judgment will be reversed, and the cause remanded for a new trial.

REVERSED.