EDWARD MAHAFFEY v. TERRITORY OF OKLAHOMA.

(Filed September 4, 1901.)

1. DISTRICT COURTS, POWER OF—County Attorney. The district courts of this territory have the power to appoint a suitable person to perform, for the time being, the duties required by law to be performed by the county attorney upon the following conditions, and no other: (1,) When the office of county attorney is vacated; (2,) when the county attorney is absent from the court; (3,) when the county attorney is unable to attend to the duties of his office.

2. SAME, POWER OF—Assistant County Attorney. There is no power vested in the district courts to appoint an assistant to the county attorney, since that authority is given to the county attorney by express statute.

3. COUNTY ATTORNEY—Duty of. The statute makes it the duty of the county attorney to appear in the district court of his county and prosecute or defend on behalf of the territory or his county, all actions or proceedings, civil or criminal, in which the territory or county is interested or a party.

4. SAME—Authority Vested by Statute. The county attorney derives his authority from the people, as expressed in the statute, and his right and authority cannot be restricted or superseded by the

district court, unless some of the conditions or disqualifications named in the statute exist.

5. SAME—Duty. The term "unable to attend to his duties" is construed to mean some physical or mental incapacity to perform the duties of county attorney.

6. TERRITORIAL COURTS—Application of Constitution to. The provision in the sixth amendment to the federal constitution which ordains that "the accused shall be tried in the district where the crime shall have been committed, which district shall have been previously ascertained by law," has no application to the judicial district in the territories of the United States. This provision of the federal constitution applies only to the federal courts in the states.

7. VENUE—Change of Not Violation of Sixth Amendment. Section 10 of our organic act provides that, "any case, civil or criminal may be removed by change of venue to another county." And in section 5144 of our statute it is provided that: "The district attorney, on behalf or the territory; may also apply in a similar manner for a removal of the action, and the court being satisfied that it will promote the ends of justice, may order such removal upon the same terms and to the same extent as are provided in this chapter, and the proceedings on such removal shall be in all respects as above provided." It must therefore follow that the removal of a criminal cause on application of the territory from one county to another, or from one judicial district to another in this territory in the manner prescribed by our statute, is not in violation of the sixth amendment to the federal constitution.

8. CRIMINAL PROCEDURE—Guilt of Defendant—Burden of Proof. it is always incumbent upon the prosecution in a criminal case to establish each and every material element of the crime charged by the evidence, beyond a reasonable doubt, before the jury is warranted in finding the defendant guilty of the crime charged in the indictment or any lesser offense therein contained; and the law never requires the defendant to establish any material element of his defense beyond a reasonable doubt.

9. SAME—Person must Retreat, When   Where a person is in a place he has a right to be, and is not the aggressor in bringing on the conflict, and is assaulted by another person in such a way as to place him in danger of death or great bodily harm, the person thus assaulted is not bound to retreat, but, on the contrary, may stand his ground and repel the danger in which he is placed with such force as will repel the attack, and protect his person from great bodily harm; and when it is necessary to protect himself from a deadly assault, or from receiving great bodily harm, even to take the life of his assailant. And such person will not be held responsible, criminally, if he acts in self-defense from real and honest convictions as to the character of the danger, induced by

reasonable evidence, although he may be mistaken as to the extent of the actual danger..

10. **MURDER—Self Defense—Instructions.** On a trial for murder where the defendant has interposed the defense of self-defense, and where there was evidence that the deceased was the aggressor in bringing on the difficulty, and the defendant was assaulted in such a manner as to place him in danger of death or great bodily harm, an instruction by the court which charged the jury, that: "While one who first makes a malicious assault upon another, continues in the conflict which ensues, he cannot justify taking the life of his adversary, however necessary it may be to save his own, or to whatever extremity he may be reduced; but if he succeeds in wholly withdrawing from the conflict, and in good faith has retreated to a place of apparent security, his right of self-defense is fully restored, and if pursued by his antagonist and there attacked in a manner to endanger his life, he is justified in taking life, if it becomes inevitable, to save life. It follows therefore, that if from the evidence in this case you find beyond a reasonable doubt that the defendant sought the deceased, with the intention of making an assault upon the deceased, and a conflict ensued, he cannot justify the taking of the life of the deceased, however necessary it may have been to save his own, no matter to what extremity he may have been reduced; but, if you find from the evidence beyond a reasonable doubt, that the defendant has wholly retreated to a place of apparent security, his right of self-defense was fully restored, and if pursued by the deceased and there attacked in a manner to endanger his life, he is justified in taking the life of the deceased, if he believed it necessary, to save his own life." Held to be erroneous as not corectly stating the law, and prejudicial to the rights of the defendant, which requires the reversal of the cause.
(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, Trial Judge.*

*J. H. Warren, W. A. Maurer* and *W. S. Denton,* for plaintiff in error.

*J. C. Strang, Attorney General,* for defendant in error.

Opinion of the court by

Hainer, J.: The plaintiff in error, Edward Mahaffey, was indicted in Dewey county, Oklahoma, charged with the

murder of William G. McDonald, and upon application of the territory the venue of said cause 'was removed to Garfield county. The cause was thereafter tried in the district court of Garfield county and the jury returned a verdict against the plaintiff in error of manslaughter in the first degree. The court sentenced the plaintiff in error to the territorial penitentiary at Lansing, Kansas, for a term of thirty years. The plaintiff in error brings the cause to this court on appeal, and seeks the reversal of said judgment.

It is contended by plaintiff in error that the court erred in refusing to fix a day to hear evidence in support of the application to set aside the indictment. The motion and application to set aside the indictment set forth in substance that J. C. Strang was appointed as an assistant to the county attorney of Dewey county without warrant or authority of law, and that in the presentation of the cause to the grand jury the said J. C. Strang was present before said grand jury and conducted the examination of the witnesses, and that during all of said time W. P. Hickok was the duly elected, qualified and acting county attorney of said county, and was in attendance upon the court and the grand jury when his presence was required by them; that there was no physical or mental disability which incapacitated him from performing his duties as county attorney at said time. The court denied or refused to set a day to permit the defendant to introduce evidence in support of said motion, and overruled the motion. To all of which the defendant excepted at the time and has assigned the same as error here.

The action of the court in appointing J. C. Strang as an assistant to the county attorney is based upon an order

which, in so far as it pertains to this question, is as follows:

"The court is informed by reputable members of the bar of said county and by sundry other persons, that the county attorney of said county is a young gentleman without experience as an attorney at law, never having practiced before the circuit or district courts; and the court having consulted and advised with the county attorney touching the gravity of the offenses pending before the court and juries of said term, is of the opinion that the peace of the citizens of said county, and good order in the community generally demand that the numerous crimes charged and pending before the court should be prosecuted with such skill and energy as will bring offenders before the court for punishment."

And that:

"In the interest therefore of the prevention of crime in said county, and the speedy punishment of criminals therein, it is by the court ordered, that the Hon. J. C. Strang be and is hereby appointed assistant to the county attorney of said county, and he is by the court authorized and empowered to act in all matters before the court in the capacity of county attorney and public prosecutor in said county."

It is contended by plaintiff in error that said order is without authority of law and is absolutely void. The question presented is: When has the district court the power and authority to appoint a special county attorney to conduct a prosecution? To determine this question it will be necessary to examine and construe the various provisions of our statute relating to the election, qualifications and duties of a county attorney, and when the authority is vested in the district court to appoint a county attorney.

Chapter 22, art. 5, sec. 1, of the Statutes of 1893, which creates the office of county attorney and prescribes the manner of his election and his qualifications, reads as follows:

"A county attorney shall be elected in each county in this territory organized for judicial purposes, at the first election for the election of county officers after the passage of this act, and at every biennial election thereafter, who shall hold his office for the term of two years and until his successor shall be elected and qualified; and shall, before he enters upon the duties of his office, take and subscribe the oath of office prescribed by law, and shall execute a bond to his county in the penal sum of one thousand dollars, with two or more sureties to be approved by the county clerk of such county, which bond shall be conditioned for the faithful performance of his duties as such county attorney, and that he will pay over to the treasurer of his county, in the manner prescribed by law, all monies which come to his hand by virtue of his office, and shall deposit such oath and, bond in the county clerk's office: Provided, That no person shall be eligible to the office of county attorney who is not duly admitted to practice as an attorney in some court of record in this territory."

Section 4 of said act, which defines the duties of the county attorney, provides:

"It shall be the duty of the county attorney of the several counties to appear in the district courts of their respective counties and prosecute and defend, on behalf of the territory, or his county, all actions or proceedings, civil or criminal, in which the territory or county is interested or a party; and whenever the venue is changed in any criminal case, or in any civil action or proceeding in which his county or the territory is interested or a party, it shall be the duty of the county attorney of the county where such indictment is found, or the county interested in such civil action or

proceeding, to appear and prosecute such indictment, and to prosecute or defend such civil action or proceeding in the county to which the same may be changed."

Section 14 of said act is as follows:

"The county attorney may appoint a deputy, or deputies, to perform the duties devolving on such county attorney, when so acting said deputy, or deputies, shall be entitled to receive the fees provided for under this act."

Section 9 of said act, which confers upon the district courts the authority to appoint a county attorney in certain cases, is in the following language:

"Each of the district courts, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, may, if the court may deem it necessary, appoint by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person appointed shall thereupon be vested with all the powers of such county attorney for that purpose."

It will thus be seen that under the provisions of section 9 of said act the district court has the authority to appoint a county attorney who shall be vested with all the powers of the duly elected, qualified and acting county attorney, upon the following conditions and no other: (1,) Whenever there shall be no county attorney for the county; (2,) when the county attorney shall be absent from the court; and (3,) When the county attorney is unable to attend to his duties. It will be seen that in order for a person to be eligible to the office of county attorney under our

statute such person must be an attorney at law who has been duly admitted to practice in some court of record in this territory. And it is made the duty of the county attorney to appear in the district court of his county and prosecute or defend on behalf of the territory all civil and criminal proceedings in which the territory or county is interested. He derives his authority from the people, and his power or authority cannot be superseded by the district court unless some of the conditions or disqualifications named in the statute exist. The fact that the county attorney has not had large experience in conducting criminal prosecutions, or the fact that he does not possess the learning or ability that other counsel may possess, is not sufficient reason to appoint an attorney to supersede him. There is no authority vested in the district courts to appoint an assistant to the county attorney. The power vested in the district court is to appoint some suitable person to perform for the time being the duties required to be performed by the county attorney, and the person appointed by the district court is vested with all the powers and jurisdiction of the county attorney, and in fact is the county attorney during such time. Hence, in the case at bar, if the court had the power and authority to appoint J. C. Strang to appear before the grand jury and conduct the prosecution in this case, he is vested with all the power and jurisdiction of a county attorney, and while acting as such, so far as Mr. Hickok was concerned, he was entirely superseded in that office. There is nothing in the record which discloses that at the time of the appointment of J. C. Strang that the duly elected, qualified and acting county attorney was absent from the court or unable to attend to his duties or that he was disqualified in any manner from performing the

duties of his office. But it is contended by the attorney general on behalf of the territory that the ends of justice may often be defeated if such a power is not given to the district courts of this territory. We do not think that this contention is well taken. Our statute confers the power on the county attorney to appoint such deputy, or deputies, as he may deem proper to assist him in conducting the prosecution of any cause. The county attorney having been elected by the people, and deriving his power by the people, in whose name he conducts the prosecutions, certainly should have control of the prosecution.

The supreme court of Michigan in construing a similar statute in *Meister v. People,* 31 Mich. 98, used the following language:

"The courts may appoint counsel to act in his place when he is absent or unable to perform his duties, or where the office is vacant, but no other power of appointment is given. Any recognition of other counsel, if valid, can only be by the request of the prosecuting attorney. He cannot abdicate his duties, and the court cannot divide or relieve them, or give to other counsel any authority whatever, independent of his responsibility. (*United States v. Morris,* 1 Paine, 209; *Hite v. State,* 9 Yerg. 198; *Com. v. Knapp,* 10 Pick. 477; *Com. v. Williams,* 2 Cush. R. 582.")

There is still another provision of our statute which may be brought into requisition whenever the necessities of public justice may require it, and that is, the governor of this territory may request the attorney general to prosecute or defend in any civil or criminal cause in which the territory may be a party or interested. (Chapter 76, art. 4, sec. 1, Statutes of 1893.)

The governor no doubt upon a mere suggestion by the district judge would request the attorney general to conduct the prosecution of an important criminal cause, should the interest of public justice require it. The legislature has the undoubted power to confer the authority upon the district court to appoint special counsel to conduct the prosecution on behalf of the territory, or to present any cause before the grand jury and to provide for adequate compensation for such services. But no such power has been conferred, and hence none can be exercised except as expressly conferred by the statute. But, it may be contended that the term "unable to attend to his duties" is broad enough to include that he is incompetent to perform such duties. In other words, if the county attorney is young and inexperienced, and not learned in the law, and is unable to conduct the prosecution with such zeal and ability as is necessary in an important criminal prosecution, that then the court may, in its discretion, under such circumstances appoint a special prosecutor or county attorney on the ground that he is "unable to attend to his duties." We do not think that this is a reasonable interpretation of our statute, and it is clearly not the intent of the law-making power. The term "unable to attend to his duties" undoubtedly means some mental or physical incapacity to perform his duties, and does not mean lack of experience or incapacity to properly conduct the prosecution. The fitness or unfitness of the county attorney is a matter that is delegated to the people to determine by their votes at each biennial election. It is for them to determine who shall be their prosecuting attorney, and if a mistake has been made the responsibility rests with the people. It is not the province of the court to make law, but to interpret it as we find it.

If there is a defect in the law it is within the power of the legislature to remedy it, and not a matter for the judiciary.

Section 5056 of the Statutes of 1893, provides what law officer shall appear before the grand jury for the purpose of giving advice or information relative to any matter cognizable before them. It is as follows:

"The grand jury may at all reasonable times ask the advice of the court or the district attorney. The district attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, and may interrogate witnesses before them whenever he thinks it necessary, but no other person is permitted to be present during their sessions except the members and a witnesss actually under examination, and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

The defendant having brought himself within the provisions of the statute we think it was error for the court not to fix a day for allowing the defendant to introduce evidence in support of said motion to set aside said indictment. (*Royce v. Territory,* 5 Okla. 61.)

It is assigned as error in the argument of counsel for plaintiff in error, that the court erred in granting a change of venue in this cause on application of the territory. It is contended by the plaintiff in error that the court was without jurisdiction to try said cause in Garfield county, for the reason that the offense charged in the indictment was committed in Dewey county, which at the time of the commission of the offense formed a part of the second judicial district which did not include Garfield county, and said Garfield

county is not now and was not at the time of the commission of the alleged offense a part of or within the second judicial district, and that the removal of the cause from the second judicial district to the fifth judicial district in said territory was in violation of the sixth amendment to the constitution of the United States, which provides as follows:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by the law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

We think that this contention is unsound. The provision in the sixth amendment to the federal constitution, which provides that the accused shall be tried in the district where the crime shall have been committed, which district shall have been previously ascertained by law, has no application to the territories of the United States. This provision of the federal constitution applies only to the federal courts in the states. Article 3, section 2, of the constitution of the United States, among other things, provides: "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the congress may by law have directed." It will thus be seen by the express terms of the federal constitution that when a crime is not committed within any

state, the trial shall be at such place or places as congress may by law have directed.    But this controversy has been put to rest by the decisions of the supreme court of the United States and is no longer an open question.    In *Cook v. United States,* 138 U. S. 157, Mr. Justice Harlan, speaking for the supreme court of the United States, after an able and elaborate review of the authorities, said:

"In respect to that clause of the sixth amendment declaring that the 'district shall have been previously ascertained by law,' it need only be said that if those words import immunity from prosecution where the district is not ascertained by law before the commission of the offense, or that the accused can only be tried in the district in which the offense was committed (the district having been established when the offense was committed) the amendment has reference only to offenses against the United States committed within a state.    (*United States v. Dawson,* 56 U. S. 15 How. 467, 487, 488; *Jones v. United States,* 137 U. S. 202, 211, 212.)    The second section of article three had provided, in respect to crimes committed in the states, that the trial by jury should be had within the state where the crime was committed.    The Sixth amendment added the further guaranty, in respect to the place of trial, that the district should have been previously ascertained by law, leaving the trial of offenses not committed within any state to be controlled by the second section of article three. The requirement in the latter section is that the trial 'shall be at such place or places as the congress may by law have directed.'    'As crimes,' said Mr. Justice Story, commenting upon this section, 'may be committed on the high seas and elsewhere out of the territorial jurisdiction of a state, it was indispensable that in such cases congress should be enabled to provide the place of trial.'    (2 Story's Const. sec. 1781.)    It was consequently provided in the act of April 30, 1790, (1 Stat. 114, chap. 9, sec. 8), that, 'the trial of crimes committed on the high seas, or in any place out of

—15

the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought.' And such was the law when the crime with which the defendants are charged was committed. (Rev. Stat. sec. 730, 5339.) But for the passage of the act of 1889, and if the public land strip was not attached by the act of 1883 to the northern district of Texas, the defendants could have been indicted and tried in the district of Kansas, where they were apprehended. (*Jones v. United States,* above cited.) So that the contention of the defendants is, in effect, that in respect to crimes committed outside of the states, in some place within the exclusive jurisdiction of the United States, congress is forbidden by the second section of article three of the constitution from providing a place of trial different from the one in which the accused might have been tried at the time the offense was committed. We do not so interpret that section. The words 'the trial shall be at such place or places as the congress may by law have directed,' impose no restriction as to the place of trial, except that the trial cannot occur until congress designates the place, and may occur at any place which shall have been designated by congress previous to the trial. This was evidently the contruction placed upon this section in *United States v. Dawson,* above cited, where the court, speaking by Mr. Justice Nelson, said: 'A crime, therefore, committed against the laws of' the United States, out of the limits of a state, is not local, but may be tried at such place as congress shall designate by law. This furnishes an answer to the argument against the jurisdiction of the court, as it respects venue, trial in the county and by jury from the vicinage, as well as in respect to the necessity of particular or fixed districts before the offense.' So, in *United States v. Jackalow,* 66 U. S. 1 Black, 484, 486: 'Crimes committed against the laws of the United States, out of the limits of a state, are not local, but may be tried at such place as congress shall designate by law; but are local if committed within the state. They

must then be tried within the district in which the offense was committed.' If congress, as it did in the act of 1790, which may be regarded as a contemporaneous construction of the constitution—may provide for the trial of offense committed outside of the states, in whatever district the accused is apprehended, or into which he may first be brought, it is difficult to perceive why, such crimes not being local, it may not provide a place of trial where none was provided when the offense was committed, or change the place of trial after the commission of the offense."

Section 10 of our organic act provides that:

"Any case, civil or criminal, may be removed by change of venue to another county."

Section 5138, of the Statutes of 1893, provides that:

"A criminal action, prosecuted by indictment, may, at any time before the trial is begun, on the application of the defendant, be removed from the court and county in which it is pending."

And in section 5144, it is provided that:

"The district attorney, on behalf of the territory, may also apply in a similar manner for a removal of the action, and the court being satisfied that it will promote the ends of justice, may order such removal upon the same terms and to the same extent as are provided in this chapter, and the proceedings on such removal shall be in all respects as above provided."

Section 9 of our organic act provides that:

"The supreme court shall define said judicial districts, and shall fix the times and places at each county seat in

each district, where the district court shall be held, and designate the judge who shall preside therein."

Thus, congress has conferred by the organic act the power upon the supreme court to ascertain and fix the various judicial districts of this territory. The boundaries of these districts may, therefore, be changed at any time by the supreme court, in its discretion. It must therefore follow that the removal of a criminal cause upon application of the territory from one county to another, or from one judicial district to another in this territory, is not in violation of the sixth amendment to the federal constitution.

It is next contended that the court improperly charged the jury on the law of self-defense. The only defense interposed by the defendant in this case was the plea of self-defense. He admitted the killing, but claimed that he acted in self-defense. The only eye-witness to the homicide who testified was the defendant. The defendant testified that at the time of the homicide he was deputy sheriff of Dewey county; that a week or ten days prior to the time of the homicide the deceased met him in the town of Taloga and threatened to shoot him; that at that time the deceased, McDonald, said: "I will meet you out on the prairie and shoot it out with you," and in answer to this the defendant said: "I am not making no gun play; I am not going to." And the defendant further said, in this connection: "If you, (McDonald,) get out we can knock it out here, and if you whip me it is all right, I won't say anything more about it; and if I whip you, you need not say anything more about it." It further appears from the record that Mahaffey lived about two miles from the home of the deceased, and that

on the day the homicide was committed, Mahaffey started for Taloga to attend a political convention. He testified that he did not know on that day where McDonald was, and supposed that he was at that time in El Reno. He further testified that when he first saw McDonald he was across the river—at that point being about three-quarters of a mile wide. Mahaffey further testified that he overtook McDonald, and in answer to the question: "Now, tell the jury what happened when you caught up with him, if anything?" the defendant answered: "When I caught up to him, I rode up to him, and I spoke to him and I says, good morning, and he says good morning, sir. And I says to him, Mr. McDonald, can you talk to me like you did in Taloga the other day, and he says, yes. Well, I says, get out and we will talk the matter over. And I told him to tie up and I would tie up, and I started to go towards a tree, and as I started to go towards a tree his team stopped, and I turned around—I saw the team stop; he was on the side of me, and I turned my head around, and just as I turned my head around, I seen him sling his Winchester on me, and I give the horse a jerk and jumped off of the horse, and when he slung the Winchester down he snapped the gun at me; and as I came onto the ground he slung the gun on to me and snapped the gun, and I went after my gun and I jerked the gun out and he worked on the lever of his gun, and he slung the gun down on me and we both shot at about the same time. I can't tell which shot first; and then he jumped up in the wagon and stood with his foot on the seat like that, (Witness shows to the jury), and he put his foot up on the seat like that, and I think he was using his gun in his left hand, and I started to run around the wagon, and he kept trying to shoot at me all the way around the wagon; and

every time I got a chance I kept a shooting and went around to the other side, and after I got to the other side he turned around and started to get out of the wagon, and then I started for the river bank and run for the river bank." (Pages 199-200 of record.)

The defendant further testified that when he rode up to McDonald he had no intention of provoking an assault that would lead to the killing, and in answer to the question: "What did you think as to whether your life was in danger at the time you looked around and saw the Winchester thrown down on you?", he said: "I thought I was gone, that was all. I thought I was a dead man, that is what I thought."

The court gave to the jury the following instruction:

"While one who first makes a malicious assault upon another, continues in the conflict which ensues, he can not justify taking the life of his adversary, however necessary it may be to save his own or to whatever extremity he may be reduced, but if he succeeds in wholly withdrawing from the conflict and in good faith has retreated to a place of apparent security, his right of self-defense is fully restored, and if pursued by his antagonist and there attacked in a manner to endanger his life, he is justified in taking life, if it becomes inevitable, to save life. It follows, therefore, that if from the evidence in this case you find beyond a reasonable doubt that the defendant sought the deceased, with the intention of making an assault upon the deceased, and a conflict ensued, he cannot justify the taking of the life of the deceased, however necessary it may have been to save his own, no matter to what extremity he may have been reduced; but, if you find from the evidence beyond a reasonable doubt, that the defendant had wholly retreated to a

place of apparent securety, his right of self-defense was fully restored, and if pursued by the deceased and there attacked in a manner to endanger his life, he is justified in taking the life of the deceased, if he believed it necessary, to save his own life."

To this instruction the defendant at the time objected and reserved an exception. We think that this instruction was clearly erroneous as highly prejudicial to the rights of the accused, and therefore requires the reversal of the cause. This instruction required the defendant to establish by the evidence beyond a reasonable doubt one of the main propositions of his defense. Such is not the law. The law never requires the defendant to establish any material element of his defense beyond a reasonable doubt. It is always incumbent upon the prosecution to establish each and every material element of the crime charged in the indictment by competent evidence, beyond a reasonable doubt, before the jury is warranted in finding the defendant guilty of the crime charged in the indictment, or any lesser offense therein contained. The vice of the instruction is that is requires the defendant to establish by the evidence, beyond a reasonable doubt, that he had wholly retreated to a place of apparent security before his right of self-defense was fully restored. We think the correct rule is this: That every person has the right to act in his own necessary self-defense, and, where a person is in a place where he has a right to be, and is not the aggressor in bringing on the conflict and is assaulted by another person in such a way as to place him in danger of death or great bodily harm, the person thus assaulted is not bound to retreat, but, on the contrary, may stand his ground and repel the danger in which he is placed with

such force as will repel the attack and protect his person from serious bodily harm; and when it is necessary to protect himself from a deadly assault, or from receiving great bodily harm, even to take the life of his assailant. And such person will not be held responsible, criminally, if he acts in self-defense from real and honest convictions as to the character of the danger, induced by reasonable evidence, although he may be mistaken as to the extent of the actual danger. (*Kirk v. Territory,* 60 Pac. 797; *Beard v. United States,* 158 U. S. 550; *Steinmeyer v. People,* 95 Ill. 383; *Roach v. People,* 71 Ill. 25; *Crews v. People,* 120 Ill. 317; *State v. Fraunberg,* 40 Iowa, 555; *State v. Bohan,* 19 Kan. 28; *Murry v. Commonwealth,* 79 Pa. St. 311.)

The judgment of the district court is therefore reversed, and the cause remanded with directions to grant a new trial, and to proceed in accordance with the views herein expressed. The clerk of this court will issue an order to the warden of the territorial penitentiary at Lansing, Kansas, to deliver the prisoner to the sheriff of Garfield county, Oklahoma, and that said sheriff shall detain the said prisoner in custody subject to the order of the district court of said county.

McAtee, J., having presided in the court below, not sitting; all the other Justices concurring.