**David Harold MEADOWS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15267.**

Court of Criminal Appeals of Oklahoma.
July 7, 1971.

Sullivan & Sullivan, Duncan, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

## OPINION

BRETT, Judge.

The Plaintiff in Error, David Harold Meadows, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Stephens County with having committed the crime of Murder. It was alleged that he caused the death of his father, Edward Harold Meadows, on the 19th day of December, 1967, "by cutting and stabbing him with a hunting knife and then shooting him with a .22 caliber rifle."

The record reflects that the decedent was at the time of the homicide divorced from defendant's mother. Defendant lived with his mother in Stephens County; and it was in her house where the homicide occurred.

On the date of the homicide, defendant's father and several other persons visited some relatives some distance from the home, where defendant lived. After the visit, defendant's father began driving the automobile, in which he and the other persons were riding, and drove into the drive of defendant's mother's home. Defendant went to the door upon noticing the arrival of the car, and his father waved for him to come to the car. He introduced defendant to his companions after which he entered the house followed by the defendant. Defendant's father asked him to go with him to some other place in order that he could meet a woman, whom the father was either intending to, or wanted to marry; but defendant declined to accompany his father on such a trip. During the ensuing conversation, the two became involved in an argument and defendant's father threatened to kill the boy's mother; and then threatened to kill him and perhaps his younger brother and sister. Twice thereafter, without apparent provocation or justification, defendant's father struck at the defendant with his fist, but missed him both times.

The fight seems to have been commenced because the defendant told his father that he would not let him carry out his threats to kill his mother, brother and sister. During the altercation, the father pursued the defendant; and, the defendant struck his father at least twice in the area of his face, after which the father tried to choke the defendant; while at the same time trying to grab defendant's hunting knife out of its scabbard. Earlier that day, defendant had been on a hunting trip and was still wearing his hunting knife. Defendant successfully reacquired possession of the knife from his father. As they continued the fight, the father continued his effort to choke the defendant; when the defendant stabbed his father twice in the chest, and several times in the back. Defendant's testimony was that his father said he was going to get a butcher knife from the kitchen cabinet and kill him. He related that at that time his father was still standing. Defendant related that he went to the bedroom, got his rifle, and returned into the kitchen area, where the fight occurred. He said his father was still standing so he fired four shots at him. Defendant testified further, that he did not know whether he had hit his father, or not; but that on the fourth shot his father fell.

Defendant related that he ran from the house into a wooded area, where he dropped the knife. From the woods, defendant went to the home of some neighbors, Mr. and Mrs. David, and asked them to call the police; he also asked for a drink of water for his stomach. He washed the blood from his hands in the Davids' house; then he asked that someone intercept his mother before she reached their home, so that if his father was still alive he would not kill her; and in order that she would not find him on the floor, if he was dead.

After the Deputy Sheriff went to the house where the dead man was, he went to the David house and asked defendant to help him find the knife. According to the Deputy's testimony, the defendant went with him to the woods and cooperated fully with him in trying to find the knife, even though they were unsuccessful. Defendant was taken to the County Jail where he was questioned, but not as to details of the homicide.

The defense for the homicide was based upon that of "self defense." After defendant produced evidence as to his reputation for being a peaceful, law abiding person, he testified concerning the facts, as he recalled them. After the defense rested, the jury was instructed, and after deliberation, the jury returned a verdict finding the defendant guilty and fixed his punishment at life imprisonment.

Judgment and sentence was imposed by the court and from that judgment and sentence this appeal was perfected.

Defendant has preserved and raises eleven propositions of error in this appeal, for most of which merit can be found. But, it will only be necessary to discuss his third proposition, which complains of the trial court's instruction on "reasonable doubt."

Defendant's third proposition of error is stated in his brief, as follows:

"The Court erred in giving instruction number 11 to the jury and in refusing to give defendant's requested instruction 2 to the jury."

The trial judge's instruction on reasonable doubt was stated in the following language:

"You are instructed, Members of the Jury, that the defendant in this case is presumed to be innocent of the crime charged in the information and this is a presumption of law that remains with him and is thrown around him for his protection up to the moment the killing is proved. When the killing is proved beyond a reasonable doubt, and his plea is self-defense, it then devolves upon the defendant to show any circumstances of mitigation or justification by some proof strong enough to create in your minds a reasonable doubt of guilt of the offense charged, unless the proof on the part of the state shows mitigation or justification in the commission of the act by the defendant."

Defendant's requested instruction number 2, was in the following language:

"To this charge, the defendant has entered a plea of not guilty, which casts upon the State the burden of proving the material allegations of the information to your satisfaction, beyond a reasonable doubt, before you would be justified in returning a verdict of guilty.

"The information is simply the charge upon which the defendant is placed upon trial and sets forth in a formal way the offense of which the defendant is accused, and it is in and of itself no evidence of the defendant's guilt, and you should not allow yourself to be influenced against the defendant by reason of the filing of such information.

"The defendant is presumed to be innocent of the crime charged against him, and *innocent of each and every material element constituting such offense, and this presumption of innocence continues until such time as his guilt is shown to your satisfaction beyond a reasonable doubt*, and if, upon a consideration of all the evidence, the facts and circumstances in the case, you entertain a reasonable doubt as to the guilt of the defendant of the crime charged against him, you must give him the benefit of that doubt and return a verdict of not guilty." (Emphasis added)

We believe defendant's proposition of error is well taken, and that defendant's requested instruction correctly states the law regarding the presumption of innocence; also, that the trial court's instruction number 11, incorrectly and incompletely defines the law in that regard. Such is the rule approved in Mahaffey v. Territory of Oklahoma, 11 Okl. 213, 66 P. 342 (1901), cited by defendant; and also recited the later ruling of this Court in Beal v. State, 12 Okl.Cr. 157, 152 P. 808 (1915). In the *Beal case, supra*, this Court cited with approval the following statement of the law applicable to the presumption of innocence, and the burden of proof:

"If in the course of the trial the court submits to the jury an instruction which

has the effect of requiring the accused to establish his innocence, or any other material fact, beyond a reasonable doubt, and a conviction is had, a reversal will follow on appeal."

The State in its brief on this proposition of error cites for our consideration 22 O.S. 1961, § 745, which provides:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

■ We interpret 22 O.S.1961, § 745, to be a statement of trial procedures, and not a statement of substantive law sufficient to overcome the fundamental conception pertaining to the rights of an accused regarding "burden of proof, or presumption of innocence."

We deem it proper to further make reference to certain comments made by the trial judge, when defense counsel was explaining to the judge his purpose for making certain specific inquiry of the defendant, during his testimony. It is reflected by the record that defense counsel informed the trial judge what he was trying to prove, and added, "this witness will testify to that." At this point in the proceedings, the trial judge commented, "I know he'll swear to anything you want him to." Although there is some dispute as to whether the jury heard the court's comment, there is certainly some ground to believe that it might have; and if the jury did hear the comment, there is no doubt but what it prejudiced the defendant. Also, there is no doubt that such a comment is unwarranted; and, if it was made within the hearing of the jury, it would have unquestionably influenced the jury in arriving at its verdict. Such comments of a trial judge most often are considered as grounds for either reversal or modification, as the circumstances might warrant; and the trial judge should restrain himself from making such opinionated remarks.

For the reasons heretofore stated, we are of the opinion that this case must be, and the same is hereby, reversed and remanded for a new trial.