## WILLIAM MORGAN v. STATE.

No. A-9495. May 12, 1939.
(90 P. 2d 683.)

206

H. M. Shirley, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. The defendant was tried in the county court of Coal county, upon information filed against him charging him with being drunk in a public place, on Main street of the city of Coalgate, was convicted, and sentenced to pay a fine of $10 and costs.

Walter Clark, testifying for the state, stated:

"I am sheriff of Coal county, Okla. On the 12th of April, 1937, I saw Billy Morgan out in the middle of the street, and I arrested him for being drunk. About 15 min-

utes before I arrested him I received a call, but I do not know who it was that called me. When I got down to the street, the defendant was about the middle of the street, staggering drunk. He was by himself, and was not bothering anybody at the time. At the Tavern they said he had been over there drunk, and had put a pistol on the counter. I thought that if he had a gun and was brandishing it around and was drunk, he had better have the gun taken off of him."

Sam Shore stated that he was a constable in Coal county, and that he saw the defendant on the 12th of April, 1937, in the middle of the street.

"I was sitting talking with some fellow on a bench in front of the Tavern. I saw Walter Clark arrest him. It is my best judgment that he was drunk at the time Clark arrested him. I have seen some that was staggering, and I would let them go. They are not good friends of mine that I let go. They all look alike to me. I was around the Tavern that night, but I did not see Billy Morgan in the Tavern. He was in the street when I saw him."

P. J. Barnett was called as a witness on behalf of the defendant; stated:

"My name is P. J. Barnett. On the 12th of April I was in the county jail of Coal county. I was cooking at that time. I was serving a sentence. They caught a still on my place. I saw Billy Morgan when he was put in jail that night. In my estimation Billy Morgan was not drunk enough to be arrested that night. I saw no signs of drunkenness after he was put in jail."

On cross-examination the witness stated that Billy Morgan was put in jail about dusk, maybe a little bit later.

"He looked sober to me. He did not look like a drunk man. I would say he was sober. I would not say that he had not had a drink, as I do not know. I would say that he was not drunk."

Jim Barnett stated that he was serving time for making liquor.

"I saw Billy Morgan on the night at the jail when he was put in. I saw him and heard him talking after he was put in the jail. He was not drunk. I would not say he was sober. He had been drinking."

On cross-examination the witness stated he could tell he had been drinking by his actions.

Slim McGehee, a witness for the defendant, stated:

"My name is McGehee. They call me Slim. I know Billy Morgan. I have known him 15, maybe, 20 years. I saw Billy Morgan in the pool hall on two or three different occasions. I do not remember seeing Billy Morgan on the night he was arrested. I do not know whether it was that night I saw him at the pool hall or not. He was sober when I saw him. I have been convicted of the crime of running a disorderly house in Oklahoma."

Billy Morgan, testifying in his own behalf, stated:

"My name is William Morgan. I am 63 years of age. I am a barber."

E. Pritchard, testifying for the defendant, stated:

"My name is E. Pritchard. I am justice of the peace in Coal county. A charge of drunkenness was filed against Billy Morgan in my court; he was not convicted, as he was not tried on the charge. There was a change of venue filed in that case."

Marvin Balch was called and testified as follows:

"I dismissed the charge against the defendant in the justice court and refiled it in the county court."

William Morgan, the defendant, was recalled and testified as follows:

"I was not in the Tavern the night I was arrested. I walked down and sat in front of the Tavern. Butch Jackson and Gassaway came out of Dr. Hipe's place and made some threatening remarks. He threw his coat back and I could see he had a gun, and he said, 'I will get that son of a bitch yet,' talking about me. When they went on, I went to the shop and got my gun and put it on, and came on back down and angled across the street to the pool hall, and went in. I stayed there probably an hour. It was after that night that I shot at Gassaway. I was

not drunk that night. I had been working all day that day, and walked down to the Tavern that night. When I came out of the pool hall I started back to the shop. When the sheriff arrested me, he walked up to me and asked me if I had a gun, and I told him I had, and he said, 'I want it.' He took the gun and put it inside of his vest, and said, 'I am going to put you in jail,' and I said, 'What's back of it?', and he said, 'I am going to put you in jail,' and carried me over and put me in. He did not say I was drunk. The reason I had the gun, I wanted to take care of myself."

On cross-examination in reply to the question of the county attorney as to whether or not he had ever been drunk, he answered:

"Yes, sir, and I paid my fine, too. I notified the officers a half dozen times as to threats that had been made against me. I did not have my gun at the time Gassaway threw his coat back and exposed his gun. I went to the shop and got it after that. I did not go back seeking to find Gassaway. I did not go towards where he was. Before Gassaway's death, he and I made friends. Mr. Gassaway was my attorney, representing me in this case at the time of his death."

The foregoing is all the testimony that it is deemed necessary to set out in this opinion.

The defendant alleges four errors committed by the trial court.

The first error assigned is that the court erred in overruling the defendant's objections to the court's qualifications.

The second, the court erred in overruling the defendant's motion to quash the entire jury panel for the reason that they were not selected as the law provides.

The third, the court erred in overruling the defendant's demurrer to the evidence.

The fourth, the court erred in not sustaining the defendant's motion to set aside the verdict of the jury, to all

of which the defendant took exceptions which exceptions were by the court allowed.

All these assignments will be considered together as they relate to the same question.

Defendant in his brief only discusses the qualifications of the court who presided at the trial and argues that the law required the county judge before entering upon the duties of his office to file and have approved a bond of not less than $3,000 and not more than $10,000, and the trial judge in this case had only filed a bond of $2,000.

The defendant relies on the provisions of section 3960, O.S. 1931, 20 Okla. St. Ann. § 279, to sustain his position that Judge W. B. Thornsbrough was not qualified to preside at the trial for his failure to file a bond of not less than $3,000 and not more than $10,000 to be approved by the county commissioners.

He admits that the judge trying this case was acting as county judge at the time this case was tried, and was transacting the general business as county judge of the county, and was in possession, holding, and exercising jurisdiction in all matters properly coming before the county court of Coal county, Okla.

Beginning with the early opinions of this court, it has been repeatedly held and defined that an officer de facto is one whose acts, though not those of a lawful officer, the law upon principles of policy and justice will hold valid so far as they involve the interests of the people and third persons, where the functions of the office are exercised by one who is in the actual possession of it under color of title.

In Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L.R.A., N.S., 1036, the court reaffirmed the doctrine set forth herein, that the acts of the officer rightly in possession of the office and under color of title are valid as against

third persons and cannot be questioned in a collateral attack.

In 15 Corpus Juris 875, sec. 215, is stated the following:

"The legality of the existence of a de facto court and its right to exercise its functions cannot be inquired into collaterally, but only in a direct proceeding at the instance of the state. Neither can the question of legal existence of a trial court be raised by appeal."

In this case the jury imposed the minimum fine upon the defendant which clearly shows that they were not biased or prejudiced against him.

There is very little conflict in the testimony. The jury is the sole and exclusive judge of the testimony, the weight and credibility of the witnesses, and after having heard all the facts, the instructions of the court, by its verdict, found the defendant guilty.

This court has repeatedly held that conflicting issues of fact are for the sole determination of the jury, and held further that a conviction will not be disturbed on appeal because of conflict in the evidence, if the evidence reasonably tends to support the verdict and judgment. The defendant was accorded a fair and impartial trial.

Finding no prejudicial or fundamental errors in the record, and the evidence being sufficient to sustain the judgment, the case is affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.