## BILL LIZAR v. STATE.

No. A-10449. Feb. 13, 1946.

(166 P. 2d 119.)

58

 

Brown Moore and Guy Horton, both of Stillwater, and Lee Johnson, of Pawnee, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Ewing C. Sadler, Asst. Atty. Gen., and Horace D. Ballaine, Acting County Atty., of Pawnee, for defendant in error.

BAREFOOT, J. Defendant, Bill Lizar, was charged in the district court of Pawnee county with the crime of receiving stolen property; was tried, convicted and sentenced to serve a term of three years in the State Penitentiary, and has appealed.

This defendant was previously convicted in this case, and appealed to this court. The case was reversed and remanded, and a new trial ordered. Lizar v. State, 74 Okla. Cr. 368, 126 P. 2d 552.

The facts are stated in the former opinion, and it is unnecessary to here repeat them. On the first trial, defendant was sentenced to serve a term of five years in the penitentiary. Here he is sentenced to serve a term of three years.

Twenty assignments of error are alleged, but defendant in his brief relies on five, as follows:

First: "The court erred in appointing Horace D. Ballaine as special prosecutor."

Second: "The court erred in appointing Mr. Byers assistant to the special prosecutor."

Third: "The court erred in overruling the defendant's application for a continuance."

Fourth: "The court erred in sustaining the objec-

tions of the state to competent, material and relevant evidence and testimony offered by the plaintiff in error."

Fifth: "The court erred in admitting incompetent, irrelevant and prejudicial evidence and testimony."

The first assignment of error is presented under three heads: (a) Mr. Ballaine was not appointed in the manner required by law; (b) Mr. Ballaine was not a suitable person within the meaning of the statutes in such cases made and provided; and (c) Mr. Ballaine did not qualify as such special county attorney, as required by law.

The applicable statute of this state with reference to the appointment of a special county attorney is 19 O. S. 1941 § 187, and is as follows:

"The district court, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or be unable to attend to his duties, or disqualified to act may, appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose. Such attorney shall be paid a reasonable compensation for his services by the county for which he is so appointed."

The facts with reference to the appointment of Mr. Ballaine as special county attorney are as follows:

At the time the information was filed, July 5, 1940, in which this defendant was charged with receiving stolen property, Mr. Ballaine was the county attorney of Pawnee county, and as such county attorney represented the state and prosecuted the defendant. The defendant was convicted and appealed to the Criminal

Court of Appeals. The case was reversed and remanded for a new trial, because of the admission of incompetent and prejudicial testimony. On February 28, 1943, and prior to the second trial, Mr. Ballaine resigned as county attorney of Pawnee county, and Mr. L. M. Kimerly was appointed to succeed him.

On March 8, 1943, the following order was entered on the journal of the district court of Pawnee county:

"Cases assigned for trial Monday, March 29, 1943.

"1953, State of Oklahoma v. Bill Lizar, and now on this 8th day of March, 1943, Horace D. Ballaine is hereby appointed special prosecutor."

On March 29, 1943, the case was called for trial. A motion for continuance was filed by defendant because of the absence of two witnesses. Evidence was taken and the motion for continuance was overruled. At that time, the following proceedings were had:

"Mr. Moore: The defendant, at this time, objects to the appearance of Mr. Ballaine, special prosecutor, for the reason that he is holding a dual office—that is, he is law clerk in the Supreme Court and for that reason, and as a matter of law is not entitled to appear as special prosecutor in this case at this time, and we ask that the case be stricken for a new trial assignment, and for the further reason that a prosecution against the defendant would be in violation of his legal constitutional rights. The Court: Overruled. Mr. Moore: Exception, and the defendant further objects to the appearance of Mr. Byers, special prosecutor, for the reason that his appearance is not authorized by law and is in violation of the legal constitutional rights of this defendant. Mr. Ballaine: I employed Mr. Byers to assist me, and if the court feels it is necessary, I would like to have you appoint him too, as special prosecutor. The Court: Very well, at your request Mr. Byers will be appointed to assist you. Mr. Moore: Exception."

Defendant in his brief cites the following cases to sustain his contention: Lattimore v. Vernor, 142 Okla. 105, 288 P. 463; Board of County Commissioners of Tulsa County v. Johnston, 192 Okla. 203, 134 P. 2d 335; Viers v. State, 10 Okla. Cr. 28, 134 P. 80; McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260; Hartgraves v. State, 5 Okla. Cr. 266, 114 P. 343, 33 L.R.A., N.S., 568, Ann. Cas. 1912D, 180; State v. Maben, 5 Okla. Cr. 581, 114 P. 1122; Dodd et al. v. State, 5 Okla. Cr. 513, 115 P. 632; Bethel v. State, 8 Okla. Cr. 61, 126 P. 698.

The state in its answer brief refers to the above cases, and asserts that they are distinguishable from the facts here presented; and also cites the following cases: Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 P. 635; Oklahoma City v. Century Indemnity Co., 178 Okla. 212, 62 P. 2d 94; State v. Sowards, 64 Okla. Cr. 430, 82 P. 2d 324; People ex rel. Attorney General v. Provines, 34 Cal. 520, 89 A.L.R. 1122; City of Ardmore v. Sayre, 54 Okla. 779, 154 P. 356; Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L.R.A., N.S., 1036; Sheldon v. Green, 182 Okla. 208, 77 P. 2d 114; Morgan v. State, 66 Okla. Cr. 205, 90 P. 2d 683; Bethel v. State, 8 Okla. Cr. 61, 126 P. 698; Mahaffey v. Territory of Oklahoma, 11 Okla. 213, 66 P. 342; Hisaw v. State, 13 Okla. Cr. 484, 165 P. 636; Hyde v. Territory. 8 Okla. 69, 56 P. 851; Board of County Commissioners, Comanche County, v. Fain, 66 Okla. 13, 166 P. 896; Baggett v. State, 35 Okla. Cr. 119, 248 P. 875; State v. Gray, 71 Okla. Cr. 309, 111 P. 2d 514.

We have read all of the cases cited, and consider it unnecessary to refer to each case. Many of the cases cited by defendant have reference to the appointment of a special county attorney, or a deputy county attorney where

they appeared before a grand jury, and the indictment returned by the grand jury was quashed or sustained. Other cases were where there was an effort being made to prohibit the duly elected county attorney from acting and a proceeding was brought by him to prohibit interference with him in the performance of his duties as county attorney.

Of all the cases cited, it occurs to us that the case of Hisaw v. State, supra [13 Okla. Cr. 484. 165 P. 639], is more nearly in point with the issues involved in this case; and the construction there placed upon the statute under consideration (19 O.S. 1941 § 187) is more in conformity with the construction which we think should be placed thereon under the facts in the instant case. In that case Judge Matson, who wrote the opinion, said:

"The regularly elected county attorney being disqualified by reason of having been employed by the defendant as counsel in his defense, prior to his election to the office of county attorney, the regular district judge of the district while holding court in another county in the district appointed Mr. Guy A. Curry, an attorney of the Haskell county bar, as special prosecuting attorney in this case. This appointment was made some two years after the return of the indictment; the special prosecutor being appointed merely for the purpose of preparing the state's case for, and conducting, the trial.

"The counsel for defendant filed numerous motions and took various exceptions, all based upon the action of the district judge in appointing a special county attorney while not in open court in Haskell county. It is contended that our statutes require that a special or substitute county attorney must be appointed by the court, and that an appointment by the presiding judge in vacation is void. and all subsequent proceedings conducted by such an appointed special county attorney are an absolute nullity. Counsel cite the case of Dodd v. State, 5 Okla. Cr. 513, 115

P. 632, in support of their contention that this appointment was void. However, in the Dodd case, the special county attorney was appointed by a district judge who had, prior to the appointment, become disqualified, and the special county attorney himself failed to properly qualify according to the laws of this state.

"In this case it is nowhere contended that the district judge making the appointment was disqualified to act, or that the special county attorney failed to take the required oath of office before acting. On the contrary, it is made to appear affirmatively that the district judge was qualified to make the appointment, and that before taking any action in the case the special county attorney properly qualified.

"The sole contention in this case is that the appointment was void because not made in open court and the order entered upon the minutes. Section 1558, Rev. Laws 1910 (19 O.S. 1941 § 187), provides:

" 'The district court, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, or disqualified to act, may appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose. Such attorney shall be paid a reasonable compensation for his services by the county for which he is so appointed.'

"The foregoing statute was intended to give the district court the power and authority to appoint temporarily a county attorney to act in the place and stead of the regular county attorney under the circumstances enumerated in the statute. Prior to the adoption of [Rev. Laws 1910], the words 'or disqualified to act' were not contained in this statute. They were inserted by the codifiers of that Code. Independent of the statute, however, the court would have the inherent power to appoint a special

county attorney under any of the circumstances therein enumerated. It is essential to the very life of the court that the proper officers be in attendance upon it. The power to appoint such officers is necessary for the protection and existence of the court and absolutely essential to the administration of justice and the enforcement of all our laws. It would be an indefensible reproach upon our institutions if crimes should go unpunished and the public business remained unattended to for want of power in a court of general jurisdiction to appoint some one to supply the place of the regular elected officer when absent from the court or disqualified to act. The courts of this state are not powerless to this extent. They have the right and power to preserve their life, and the machinery of the court cannot be kept in motion without its proper officers. It is therefore an inherent power of the presiding judge of the court to supply these officers when there is a temporary vacancy or a disqualification in any particular case. We conceive it our duty therefore to give the foregoing statute a broad, practical, and common-sense construction in order to carry into effect the purposes for which it was enacted, and to give expression to this inherent power of courts of general jurisdiction in this state. We admit that it was intended that the special county attorney should be appointed by the court; but should an irregularity in the appointment destroy its effect and render void all the acts of this special officer where it appears conclusively from the record that with the knowledge and consent of the court the officer proceeded to his duty? In this case, while the original appointment was made by the judge in vacation, yet when the case was called for trial, and objection made to that appointment, the judge in open court before proceeding to the trial of this case announced that the appointment had been made by him, and permitted the special county attorney thus appointed to proceed as the representative of the state in this action. It is admitted also by counsel for the defendant that the regular county attorney was disqualified in this case; that the special county attorney who represented the state was qualified to act, and the very judge who made

the appointment in vacation presided at the trial. It is our opinion, therefore, that the action of the trial judge in permitting the special county attorney to act under these circumstances amounted in itself to an appointment made by the court, and was a specific ratification by the court of everything that the presiding judge had done in vacation and at his chambers. The purpose of having the appointment made by the court is to permit a judicial determination of the fact that some ground exists under the statute which permits an appointment to be made. That such a ground did exist clearly appears from the record of the trial and proceedings in this case. The purpose of having the order of appointment noted in the minutes of the court is to supply a record thereof, and in our opinion it is a substantial compliance with that provision of the statute if the order of appointment be recorded on the journal of the court and made a part of the proceedings of the case, as was done in this instance. In the case of State v. Duncan, 116 Mo. 288, 22 S.W. 699, it was held:

" 'Where there was no prosecuting officer in attendance on the trial, the court had the power, aside from Revised Statutes 1889, § 643 [Mo.R.S.A. § 12949], to appoint a temporary representative of the state; and the fact that, in the absence of the circuit attorney, the trial court permitted another to represent him, was tantamount to an appointment.'

"And again, section 5908, Revised Laws 1910 (Tit. 22 O.S. 1941 § 859) provides:

" 'If the county attorney fails, or is unable to attend at the trial, or is disqualified, the court must appoint some attorney at law to perform the duties of the county attorney on such trial.'

"The latter statute permits the court to appoint a special county attorney for the trial of any particular case where the regular county attorney is disqualified. These statutes are merely expressive of the inherent powers of a court of general jurisdiction, and when it is made to appear, as it does in this case, that a contingency arose under which it was proper for the court to appoint a sub-

stitute for the county attorney, although the appointment be made in vacation, if afterwards in open court the same judge recognizes the appointment and permits a qualified person to act upon the trial in the place and stead of the disqualified county attorney, there has been a sufficient compliance with the statutory requirements to validate said appointment."

See also Hyde v. Territory, supra; Baggett v. State, supra; State v. Gray, supra, and Board of County Commissioners of Comanche County v. Fain, supra.

The language used above applies with equal force here. The district judge who made the appointment in this case was the duly qualified and acting district judge. The record discloses that the regular county attorney, Mr. Kimerly, was disqualified by reason of having represented the defendant in this identical case at the time of his first trial. Mr. Ballaine was the attorney who represented the state as county attorney at the time defendant was charged and tried, was fully familiar with the case, and well qualified to represent the state.

We next consider the contention that Mr. Ballaine was not a "suitable" person, within the meaning of the statute.

This contention is based on the fact that he was at the time of the trial legal assistant to one of the Judges of the Supreme Court, and the argument is made that he could not hold two offices at the same time, especially by reason of the provision of the statute:

"Such attorney shall be paid a reasonable compensation for his services by the county for which he is so appointed."

The contention of the defendant that Mr. Ballaine could not be appointed as special county attorney is by reason of 51 O.S. 1941 § 6, which is as follows:

"Except as may be otherwise provided, no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the State. Provided, that the provisions of this Section will not apply to notaries public and members of the Textbook Commission."

Defendant does not cite any authority to sustain his contention, but makes the argument that Mr. Ballaine was, by reason of his position, in the same position as a state officer, and that it would be unfair to a defendant to permit the appointment of a "state officer" with the power of his office, to prosecute a defendant.

We do not consider this reasoning sound, for the reason that in our opinion, a legal assistant to one of the Judges of the Supreme Court is not an officer or deputy officer as contemplated by the statute above quoted. He does not under the law perform any duty of the Judge. He cannot sit or act in his absence, and he cannot act in his stead, or perform any duty except that of an assistant in preparing opinions and other legal work, which must meet the approval of the Judge himself. Certainly he was not a deputy as contemplated by the statute.

In the case of Guthrie Daily Leader v. Cameron, supra, the Supreme Court of this state, in defining a public officer, said:

"A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, either executive, legislative, or judicial, to be exercised for the benefit of the public; and unless the powers conferred are of this nature the individual is not a public officer."

See, also, Oklahoma City v. Century Indemnity Co., supra; and State v. Sowards, supra.

Having held that Mr. Ballaine is not a public officer as contemplated by the statute above quoted, we are of the opinion that he does not come within the provision of receiving two salaries for his duties as special prosecutor. His appointment was for a special matter. He was no doubt appointed by reason of his familiarity with this case, as hereinbefore set out. He was neither elected nor appointed for a definite time, nor was he required to furnish bond for the faithful performance of his duties. There was no fixed salary or compensation. He was not holding any other "office" as contemplated by the statute. The statute appointing three district judges in this state as members of the Court of Tax Review, and who draw "compensation" in the form of traveling and living expenses while performing the duties of that office, would not, in our opinion, come within the provision of the statute above quoted. And they are public offices. 89 A.L.R. 1122; People ex rel. Attorney General v. Provines, supra; Hutchins v. Des Moines, 176 Iowa, 189, 157 N.W. 881; Maples v. Road Improv. Dist., 137 Ark. 177, 208 S.W. 577.

We next consider the contention that Mr. Ballaine did not qualify as such special county attorney, because the record does not disclose that he filed an oath of office. There is nothing in the record to show that he did not do so. There is a presumption of the regularity of all proceedings, and in the absence of any proof that he did not qualify in accordance with the law, it will not be held that he did not so qualify. Bethel v. State, 8 Okla. Cr. 61, 126 P. 698.

Instead of a strict technical construction of the statute, that it was necessary for the record to affirmatively

show that a hearing was had as to the disqualification of the county attorney, and that Mr. Ballaine executed an oath of office which was properly filed, we adopt the expression used in the Hisaw Case, supra, where it is said:

"We conceive it our duty therefore to give the foregoing statute a broad, practical, and common-sense construction in order to carry into effect the purposes for which it was enacted, and to give expression to this inherent power of courts of general jurisdiction in this state."

There is nothing in this record to show that defendant was in any way prejudiced by the appointment of Mr. Ballaine as special county attorney. His conduct and handling of it were above reproach. There are some few facts in the Hisaw Case a little different from those here presented, but the principles of law involved are the same. By reason of the facts hereinbefore stated, we are of the opinion that the court did not commit error in appointing Mr. Ballaine as special county attorney.

It is next contended that the court erred in appointing Mr. Byers assistant to the special prosecutor. The record in reference to this is as follows:

"Mr. Moore: * * * and the defendant further objects to the appearance of Mr. Byers, special prosecutor for the reason that his appearance is not authorized by law and is in violation of the legal constitutional rights of this defendant. Mr. Ballaine: I employed Mr. Byers to assist me, and if the court feels it is necessary. I would like to have you appoint him too, as special prosecutor. The Court: Very well: At your request, Mr. Byers will be appointed to assist you. Mr. Moore: Exception."

This objection, it seems to us, is technical. We fail to find anything in the record, and nothing has been called to our attention, indicating that the actions of Mr. Byers were in any way prejudicial to the rights of the de-

fendant. In fact, the record does not disclose any particular activity of Mr. Byers in the prosecution of the case. The case of Mahaffey v. Territory, supra [11 Okla. 213, 66 P. 343], cited by defendant, is not applicable to the facts here presented. In that case, an attempt was made by the Territorial district judge to appoint an assistant to the regularly elected count attorney for the reason that the county attorney "is a young gentleman without experience as an attorney at law, never having practiced before the circuit or district courts." This was an attempt to substitute the assistant for the regularly constituted county attorney, without any showing of his disqualification in the particular case, and giving the assistant full and complete powers and duties which the law imposed on the regular county attorney. The court held that the district judge did not have this power and that he did not have the right to appoint an assistant county attorney, as the law gave that right to the county attorney himself. In the instant case, the appointment of Mr. Byers was made at the request of the special county attorney.

It is next contended that the court erred in overruling defendant's application for a continuance.

This application was based upon the absence of the witnesses Louis Brown and Doc Marrs, who, with Sam Marrs, were the parties who stole the property which defendant was charged with receiving. The court heard the motion for continuance, and permitted the introduction of testimony, and also admitted in evidence a letter written by Louis Brown to the defendant, dated November 22, 1941. The defendant testified at this hearing, as did others, including Mr. Ballaine, the special county attorney.

It was revealed that the motion for continuance was filed March 29, 1943, the date the case was set for trial. A subpoena had been issued for the witnesses Louis Brown and Doc Marrs on March 24. 1943, and returned unserved.

It was shown by the evidence that the wife of the witness Brown lived in Pawnee county. She was the daughter of T. Marrs, and a sister of Sam and Doc Marrs. The letter hereinbefore referred to had been written to the defendant by the witness Louis Brown on November 22, 1941, and subsequent to the first trial of this case. At the first trial, Brown had testified for the state, and in this letter he repudiated a part of the testimony given by him, stating that it was given by reason of promises made to him by certain officers that he would not be punished if he would testify against the defendant Lizar; and giving that as his reason for giving false testimony against Lizar. The defendant himself testified that he had seen Louis Brown on the streets of Pawnee two or three weeks prior to the date of the trial. That he had never at any time talked with Brown about the letter he had received from him, and did not know "what he would testify, on account of the promises made to him."

Mr. Ballaine testified that the witness Brown had been absent from his home in Pawnee for the last eight months or so nearly all of the time, except as he had come home on week ends, and that his wife and child were at the home of T. Marrs, his father-in-law. That he had talked with Brown about two months prior to the trial, and told him it would be necessary for him to be a witness on behalf of the state, and Brown had said he would be there when needed. That he had caused a subpoena to be issued for him, but he could not be found, and that he had made inquiry of his folks as to where he could be

found, and they said they did not know. Mr. Ballaine made certain statements as to what he thought Brown would testify to, but it is not necessary to state them here, as they were probably not considered by the court.

It was also revealed that the case had been set for trial once before this date since it was reversed, and had been continued. Defendant did not have a subpoena issued for the witness at that time.

As to the witness Doc Marrs, Mr. Ballaine testified that he was a young boy about 14 years of age, and did not know anything about the case as to whether or not Bill Lizar was involved; and that he had not lived in Pawnee county for three or four years.

The law is well settled in this state that the granting or refusal of a continuance rests within the sound discretion of the trial court, and unless that discretion has manifestly been abused, the court's action will not be set aside. It is our opinion that the facts above stated and as revealed by the record do not show that the court abused its discretion in this instance. The court was justified in finding that the defendant had not used due diligence in attempting to secure the testimony of these witnesses. The statements heretofore made reveal this fact. The letter attached to the motion was dated November 22, 1941, and the second trial of defendant was November 29, 1943. The case was reversed and the mandate sent back to Pawnee county on June 30, 1942. The case had been continued one time after it was sent back.

There was probably another reason considered by the court, and that was that the witness Brown was attempting to change his testimony from that given at the former trial. We have fully discussed that question and cited many authorities in the case of Whitworth v. State, 80

Okla. Cr. 239, 158 P. 2d 364. It is unnecessary to quote therefrom. We are of the opinion that the court did not err in overruling the motion for continuance.

It is next contended that the court erred in sustaining an objection to competent, relevant and material testimony offered by defendant.

This contention is based upon the refusal of the court to permit the defendant to introduce in evidence a letter written by the witness Brown to defendant, and to which reference has heretofore been made. It is very clear that this testimony was hearsay and inadmissible. We also call attention to the fact that this case was reversed for the very reason that the court permitted the state to introduce in evidence against the defendant, a letter written by this same witness to the defendant, on the ground that it was hearsay and inadmissible. The case of Little v. State 72 Okla. Cr. 273, 115 P. 2d 266, cited by defendant, does not sustain defendant's contention.

It is finally contended that the court erred in admitting incompetent, irrelevant and prejudicial testimony.

This contention is based upon certain questions asked the defendant with reference to statements made by him in the sheriff's office at Pawnee just prior to his arrest and in the presence of a number of officers. Mr. Harmon, sheriff of Pawnee county, was questioned with reference to a conversation, and replied:

"A. Bill Lizar was asked where he got the roan cow, and he said he worked for her and got her from the man. Q. Was he asked who that man was? A. Yes sir, I think so—I think he was. Q. What did he say? A. I believe he made the remark that the lawyer would talk for him."

Certain questions with reference to this were asked the defendant while he was on the witness stand, as to why he did not tell from whom he got the cow. He testified that his refusal to tell was on the advice of his lawyer who was just outside the room at the time of the conversation. Of course, the defendant had the right to refuse to answer questions at that time, as advised by his counsel. He had not been placed under arrest, but was detained for investigation by the officers, and was placed under arrest immediately following this conversation. From an examination of the record, we do not find that the questions asked the defendant were so prejudicial to him as to require a reversal of this case. The jury was given the benefit of his answer that his counsel had told him before he entered the room that he did not have to answer any questions and for him not to do so. We do not think the jury was prejudiced by reason of the questions asked and the answers given.

We have given this case very careful attention and consideration. Both the defendant and the state have filed able briefs. This defendant has been twice tried before a jury of his home county, and twice convicted. The evidence, especially with reference to the identification of the cow, which it is charged defendant received, was conflicting. This was a matter for the proper consideration and final determination of the jury. An examination of the record reveals that they were justified in the conclusion which they reached.

We do not find any error in this record which would justify a reversal of the case, under the law.

For the reasons above stated, the judgment and sentence of the district court of Pawnee county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.