Max HOBSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12050.

Criminal Court of Appeals of Oklahoma.

Dec. 1, 1954.

696

Tillman & Tillman, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Plaintiff in error, Max Hobson, was charged by information filed in the district court of Washington County with the crime of burglary in the second degree, was tried before a jury, convicted, and his punishment fixed at three years imprisonment in the State Penitentiary. Appeal has been duly perfected to this court.

Plaintiff in error, hereinafter referred to as defendant, has failed to notice the rules of this court, in that he failed to set out and present separately the specifications of error relied on, which has made difficult a study of the contentions of error as presented in the brief. We have carefully

read and studied the record, including the instructions to the jury, the motion for new trial, motion in arrest of judgment, and have considered the petition in error. Attorneys would materially aid this court by studying and complying with the rules of the court in the prosecution of cases on appeal.

■ Complaint is made throughout the brief of the fact that Mr. Daniel Bassett, attorney, assumed the leading role in the prosecution of the case. The record discloses that Mr. Bassett was county attorney when the information was filed on February 3, 1953; that the case was tried once but the jury could not agree, and was discharged. The record does not show who prosecuted the case at such trial, but the record does show that when the case came on for trial the second time and on December 8, 1953, the State was represented by Laurence W. Varvel, county attorney, and Daniel Bassett, listed as assistant to the county attorney. No specific objection was raised before the trial began, or during the trial as to the appointment or qualifications of Mr. Bassett to act, or that he was not properly qualified. A deputy county attorney when so acting may perform every act that the county attorney is authorized to perform. Canada v. Territory, 12 Okl. 409, 72 P. 375; Fooshee v. State, 3 Okl.Cr. 666, 108 P. 554; Pace v. State, 13 Okl.Cr. 580, 165 P. 1160.

It is claimed that the regular county attorney sat by and permitted Mr. Bassett to take full charge of the case. If Mr. Bassett was a special prosecutor this argument would have some merit, but there is nothing in the record to clearly support this intimation.

The assignment presents nothing requiring interference with the judgment appealed from. Bethel v. State, 8 Okl.Cr. 61, 126 P. 698; Teeters v. State, 49 Okl.Cr. 13, 292 P. 879; Lizar v. State, 82 Okl.Cr. 56, 166 P.2d 119; Wingfield v. State, 89 Okl.Cr. 45, 62, 205 P.2d 320.

■ Complaint is made as to the opening statement on the part of the State. Mr. Bassett read the information to the jury, and stated that the defendant had entered his plea of not guilty to the charge. Counsel for the defendant interposed an objection because, as he said: "I want to make the further objection: The county attorney has not quoted the law with respect to the plea of the defendant." The court overruled the objection, so that when counsel for the defendant made his opening statement he said: "There is only one preliminary statement I want to make, and that is that when the defendant enters his plea of not guilty that that throws upon the State the burden of proving all of the material facts charged in the information beyond a reasonable doubt. That was omitted on the county attorney's statement."

The court overruled the defendant, stating: "The statute does not call for that sort of thing at all."

By Tit. 22 O.S.1951 § 831(1, 2), it is provided:

"The jury having been impaneled and sworn, the trial must proceed in the following order:

"1. If the indictment or information is for a felony, the clerk or county attorney must read it, and state the plea of the defendant to the jury. In other cases this formality may be dispensed with.

"2. The county attorney, or other counsel for the State, must open the case and offer evidence in support of the indictment or information. * * *"

The record shows that the information was read and the plea of the defendant stated. That is all that is required. As a matter of practice perhaps a majority of attorneys go further and make a statement along the line contended for by defendant, but the statute does not so require.

It is claimed that it was error for the assistant to the county attorney to read the information. As stated, we can not discover from the record whether Mr. Bassett had been appointed by the county attorney as an assistant, or whether he was a special prosecutor. At all events, if such was error, as stated in Canada v. Territory,

supra [12 Okl. 409, 72 P. 376], by Burwell, Justice:

"It is only an error occurring during the trial, and cannot be reviewed here, because no objection was made at the time to the deputy county attorney reading the indictment to the jury, and stating the defendant's plea."

When the opening statement was completed, counsel for the defendant stated:

"We want to move the court at this time to declare a mistrial on account of the opening statement of special counsel representing the State."

No more specific objection was made concerning the opening statement. The court overruled the objection.

■ We note and cannot approve the last sentence of the opening statement, which was:

"We believe and trust that you will render a verdict finding the defendant guilty."

The above general objection did not sufficiently call this statement to the attention of the court, so that the court could have advised the jury to disregard any personal desires of Mr. Bassett, and Mr. Bassett would have had opportunity to have added to his statement that, "if the State produces evidence to your satisfaction in support of the matters outlined * * *." We must assume that had the statement been clearly called to the attention of the court he would have carried out his duty in respect as stated.

■ Of course, the county attorney's opening statement should be confined to advising the jury concerning fact questions involved, so as to prepare their minds for evidence to be heard, and the scope of such statement should be limited to getting before the jury a detail of testimony expected to be offered. The prosecuting attorney should not in the opening statement, closing statement or at any other place during the trial, state to the jury when clearly not predicated on the evidence to be developed or that has been introduced, his personal opinion as to defendant's guilt. The conclusions that are advanced for the consider-

ation of the jury must be, as stated, predicated on the evidence actually admitted. See Williams v. State, 4 Okl.Cr. 523, 114 P. 1114; Cline v. State, 57 Okl.Cr. 206, 213, 47 P.2d 191; Hill v. State, 76 Okl.Cr. 371, 137 P.2d 261. For a case where a conviction based on circumstantial evidence was reversed on account of proposed evidence that was not offered, see Hilyard v. State, 90 Okl.Cr. 435, 214 P.2d 953, 28 A.L.R.2d 961, and annotations.

■ The record discloses that two witnesses who testified for the defendant at his former trial were absent; that J. C. Durrill was alleged to be in California, and witness Finis Schull's whereabouts were alleged to be unknown. The court had properly refused a continuance on account of such absences, but permitted the court reporter who took such evidence in shorthand at the former trial to read from her notes the evidence of said witnesses so given in behalf of the defendant.

The State in rebuttal was permitted by the court to introduce through the court clerk of Washington county, records of former convictions of witness Durrill of felony charges in the district court of Washington county, the State contending that at the first trial the county attorney was not aware that said witness had been convicted for a felony, and hence did not cross-examine said witness as to such fact. Defendant states: "The long standing rule has been completely disregarded. The witness must first be asked the question and given the opportunity to admit his conviction of a felony or deny the same."

The proposition raised is answered by Sec. 381 of Tit. 12 O.S.1951, and was construed in Storer v. State, 84 Okl.Cr. 176, 180 P.2d 202, 204, where we said:

"The statute, 12 O.S.1941 § 381, permits proof of a prior conviction of the defendant in a criminal case for the purpose of affecting his credibility as a witness. This proof may be made either by the record or on cross-examination of the defendant."

See also State v. Douglass, 81 Mo. 231; State v. Ede, 167 Or. 640, 117 P.2d 235;

and State v. Cunningham, 173 Or. 25, 144 P.2d 303, 313.

To make out its case the State produced evidence to show that the defendant had, some three weeks prior to the burglary charged, opened up a restaurant in Dewey and just across the street from the grocery store of Bill Claiborne, known as Carter's Grocery; that on Sunday morning of September 8, 1952, between 2 and 3 o'clock A. M., said grocery was burglarized by the forcing of the rear door and the taking away of a gray colored iron safe. The safe was dragged to the dump grounds less than a mile away. Two witnesses were awakened around 2 A. M. on the night in question and heard the safe being dragged along. One saw the sparks flying from the ground; one saw two men in a two-seated dark car, and thought it was a box being pulled, and that the box was fastened to the rear bumper with a chain.

Bill Claiborne testified as to the burglary, identified the safe found at the dump grounds as his, and that on Sunday night preceding the burglary the safe contained $478.97 when he closed his store. He stated the safe was four or five feet tall and four or five feet wide; that he found the back door to his store open and the safe gone at 6 A. M. Monday, September 8, 1952 and at about 8 A. M. he found his safe at the dump grounds and the door had been removed and was on the ground nearby; that the wheels to the safe had been bent back and some were gone. He testified that the defendant had been trading with him.

Alva W. Tucker testified to finding the safe on the Monday morning in question, and testified to finding $12.80 in change as well as certain papers on the ground near the safe.

Wilbur D. Spears, Sheriff of Washington county, testified to investigating the burglary; to examining the safe, taking paint scrapings from it; making plaster casts of tire tracks of a car that had apparently been used in dragging the safe; that all this was sent to the F. B. I. laboratory in Washington, D. C., along with paint scrapings found on a bumper of a 1951 Ford sedan belonging to Max Hobson, the defendant. That Hobson had prior to the taking of the scrapings permitted him to compare the plaster casts of tire marks with the tires on the Ford sedan, and that witness found the two front tires to exactly match the plaster cast impressions.

Earl Sellers of the Oklahoma State Department of Public Safety testified to assisting Sheriff Spears in the investigation of the burglary in question. Objections to the introduction in evidence of the two automobile casings which matched the plaster casts and the bumper because taken from defendant's car without his consent was not well taken. See Nowlin v. State, 65 Okl.Cr. 165, 83 P.2d 601.

W. S. Radebaugh, merchant police of Bartlesville, testified that on the early morning of September 8, 1952 he saw the defendant Max Hobson at Dennis Forrest's service station at Second and Cherokee Streets; that he was acquainted with the defendant at the time; that it was between 2 and 3 o'clock in the morning; that defendant got out of a dark Ford car and wanted a pencil and paper and to use the telephone; that he made a phone call, wrote something on the paper, and walked out, got in the car and drove north on Cherokee. That there was another man in the car, but witness did not recognize him. Witness said that defendant's clothing looked like he had been laboring, and that his shoes were dusty.

Thomas Jefferson Cochran, a cab driver, testified that he was at the cab office at 120 West Second Street, Bartlesville, a little before midnight on September 8, 1952 and Max Hobson came there and wanted to borrow a chain; that he lent him a chain about 13 feet long; that another man was with Hobson, whom witness did not know; and that Hobson never did return the chain.

John F. Gallagher, special agent of the Federal Bureau of Investigation and assigned to the F. B. I. laboratory in Washington, D. C., testified to examining paint specimens from a bottle identified by State officers as having come from the safe found at the Dewey dump grounds, and a bottle of paint specimens identified as having come from the bumper of Max Hobson's Ford sedan. He stated that he used a specto-

graph and other methods of making the examination. That he found the paint from the safe contained six-layered chips, and that six-layered paint chips which were similar in color, texture, layer structure and composition were found in the specimen from the bumper of defendant's car.

■ The testimony of witness Gallagher was objected to as hearsay, but the record discloses that the exhibits about which witness testified were fully and completely identified and traced from their origin to the time they were delivered to and examined by the F. B. I.

The defendant testified. His defense was in the nature of an alibi. He stated that he was born in Bartlesville, and had relatives there, and that his wife's folks lived at Dewey; that he opened a cafe across the street from Carter's grocery from where the iron safe was taken, about three weeks prior to this occurrence; stated that he traded at the store in question; admitted that he owned a 1941 Ford coach and had a special bumper on it; that he had used the car just prior to coming to Dewey in his work in the oil fields of Nebraska. He admitted that the bumper and tires introduced in evidence came from his car; stated that he often drove to the dump yard in question to dump garbage from his cafe; he denied breaking in the Carter store or having anything to do with dragging the iron safe to the dump grounds and breaking it open or obtaining its contents. Defendant testified that on the night in question he saw his two absent witnesses, Finis Schull and J. E. Durrill, at Mary's Cafe in Dewey; saw Schull about 1 o'clock that night, saw Durrill about 2 or 3 A. M., and agreed to drive him to Bartlesville. That on the way to Bartlesville a man flagged them down; that his car was in the ditch and he wanted them to pull him out, but they could not find a chain, so defendant went to town, got a chain and went back and pulled the man out. That he first stopped at Dennis Forrest's service station where he saw Mr. Lane Bell, and then went to the Osage Cab place, where he got a chain from Mr. Thomas Cochran. He said that when he went to the Forrest service

station the second time he saw Mr. Radebaugh, a merchant policeman. Witness stated that he gave the chain to the boy whose car he pulled out of the ditch and asked him to leave it at the cab company in Bartlesville, and that the boy had a Tulsa tag on his car but said he knew Bartlesville and would return the chain, but witness found out that the chain was not returned.

Defendant further stated that Durrill was working at Claremore and came to Dewey just for the week-end and that defendant left him at the Osage Cab after 2 or 3 A. M., and defendant stated that he returned to Dewey and opened up his restaurant around 5:30 A. M., and that he learned for the first time from the bread man who came to take his order that the Carter grocery across the street had been robbed; that this was about 6:30 A. M.

■ An examination of the record reveals that the court advised the jury of the theory of the defendant's defense and defined "Alibi". The issues were fairly submitted and it was within the province of the jury to determine the issues, and we find nothing in the record that would justify this court in interfering with the verdict and judgment rendered, unless the matter of the jury separating prior to rendering a verdict constituted fundamental error.

■ It is asserted by the Attorney General that the incident to be mentioned, presents a question that has not heretofore been directly treated by this court. The defendant has not devoted much attention in his brief to the question. That is to say, it appears that after the case had been submitted to the jury and they had deliberated a short time, they advised the bailiff that they wanted to go to lunch before completing their deliberations. The bailiff therefore conducted them before the court, where the following occurred:

"The Court: I am sure, gentlemen, that neither the rights of the defendant nor the rights of the State will be prejudiced by your separating and going to lunch and coming back at 1:30 and continuing your deliberations. Am I justified in that conclusion?

"The Jurors: Yes, sir.

"The Court: You won't talk about it to anybody else or let anybody talk to you, or suggest to you about any phase of it, or anything connected with it. Don't do that. If somebody does try to bother you with this, tell him you are on this jury and are not allowed to nor going to listen to him. If he persists, tell him you will report him to the court. And you do that. Now, be careful. The State is entitled to that, and so is the defendant. You are to take care of the interests of both. You are as much a juror for the defendant as for the State, and as much a juror for the State as you are for the defendant. Come back at 1:30."

Neither counsel for the State nor the defendant objected to the action of the court. But the record shows that on sentence day, being five days after the jury returned a verdict of guilty, counsel for the defendant filed a motion for new trial and in arrest of judgment, paragraph nine of which sets out: "That the court erred in permitting the jury to separate and to mingle with the bystanders and onlookers, and to go home for lunch after said case had been submitted to them." As is seen, it was not alleged that any actual prejudice resulted, nor is it claimed that the separation was contrary to any consent of the defendant.

This court has had before it cases where the jury was permitted to separate prior to the final submission of the case and over the objections of the defendant, and a few where the separation over the objection of the defendant was permitted after the final submission of the case, and we have had cases where counsel for the State and the defendant consented to the separation after final submission, but we do not find one where the consent to the separation was by mere implication by standing mute and not objecting when there was plenty of opportunity.

The cases of Martin v. State, 92 Okl.Cr. 182, 222 P.2d 534, and Eslinger v. State, 41 Okl.Cr. 426, 273 P. 1024, and cases cited therein, involve cases in the first categories above mentioned and the principle involving statutory and constitutional rights that may be waived, may prove of interest.

In the case of Walker v. State, 71 Ga.App. 38, 29 S.E.2d 819, in paragraph 2 of the syllabus, the court said:

"Even though in a criminal case where, after completion of the evidence and instructions by the court to the jury, the jury are allowed, in the presence of the defendant and his counsel, to disperse for lunch, without any objection thereto, the defendant and his counsel will be held to have impliedly consented to such dispersement, and they can not thereafter successfully assign error thereon."

See also State v. Bowman, Mo., 12 S.W.2d 51; Belcher v. Commonwealth, 247 Ky. 831, 57 S.W.2d 988; Fowler v. Commonwealth, 260 Ky. 433, 86 S.W.2d 148; Sedlacek v. State, 147 Neb. 834, 25 N.W.2d 533, 169 A.L.R. 868; Polin v. State, 14 Neb. 540, 16 N.W. 898, 901; 53 Am.Jur., Trial, § 892; Hubbard v. Commonwealth (where objection to separation was made), 310 Ky. 283, 220 S.W.2d 582.

In Martin v. State, supra [92 Okl.Cr. 182, 222 P.2d 551], we said:

"It is true that after a case is submitted to the jury that they are supposed to be placed in charge of a bailiff or bailiffs and kept together, and there is no statutory provision giving the court any discretion in the matter after the case has been submitted, as is provided prior to submission, Tit. 22 O.S. A. § 853, yet this court has held that a defendant in a criminal case may waive any right not inalienable given him either by the statute or the constitution, where it can be relinquished without affecting the rights of others."

But in the within case there was no specific waiver entered of record. Could there be a waiver by implication? The record is clear that both counsel for the State and counsel for the defendant were present when the court announced his intention of permitting the jurors to separate and go to their separate places for lunch. No objection was made at the time, as heretofore recited, though there was full op-

portunity. The matter of permitting the jurors to separate was a matter of procedure, amounting to an irregularity, which must be taken advantage of by exception. It is true that the defendant had the right to have the jury kept together after final submission until they agreed upon a verdict or were discharged by the court, but the right coming within the classification of those rights that can be waived, as heretofore determined, the defendant and his counsel by failure to raise the question at the time the court announced his intention of permitting the jury to separate, are deemed to have acquiesced, and objections interposed for the first time on a motion for new trial, came too late.

The judgment of the district court of Washington County is affirmed.

JONES and BRETT, JJ., concur.